**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 6 1999**

**PATRICK FISHER**
Clerk

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

MARIA DEL CARMEN CALDERON,

    Plaintiff-Appellant,

v.

KANSAS DEPARTMENT OF
SOCIAL AND REHABILITATION
SERVICES; ROCHELLE
CHRONISTER, Secretary of the
Kansas Department of Social and
Rehabilitation Services; CAROL
BACON, Judge of the Eighteenth
Judicial District, Juvenile Department,
Sedgwick County, Kansas,

    Defendants-Appellees.

No. 98-3183

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 97-CV-1432-WEB)**

---

Patricia Mendoza (Amalia S. Rioja, Mexican American Legal Defense and
Education Fund, Chicago, Illinois, and Ladessa De La Cruz, De La Cruz & Doran,
Wichita, Kansas, with her on the briefs), for Plaintiff-Appellant.

John R. Dowell, Assistant Attorney General, Topeka, Kansas (Carla J. Stovall,
Attorney General, Topeka, Kansas, and C. William Ossmann, Chief of Litigation,
Department of Social and Rehabilitation Services, Topeka, Kansas, with him on
the brief), for Defendants-Appellees.

Before **SEYMOUR**, Chief Judge, **MAGILL**[*] and **EBEL**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

---

[*]The Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Ms. Calderon filed this action under 42 U.S.C. § 1983 against the State of Kansas, Rochelle Chronister as Secretary of the Department of Social and Rehabilitation Services (SRS), and Carol Bacon, a state court judge. In response to defendants' motions, the district court dismissed the action on various grounds including Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Ms. Calderon appeals and we affirm.

**I**

Ms. Calderon's underlying suit arises out of state court proceedings that resulted in the removal of her children from her care and custody. During the proceedings, Judge Bacon allegedly asked Ms. Calderon questions regarding her national origin, immigration status, marital status, socioeconomic status, and birth control practices. Ms. Calderon sued the state, the judge, and Ms. Chronister for allegedly violating her rights under the Fourth, Fourteenth and Fifth Amendments. She also asserted state tort claims against defendants. Defendant Chronister answered the complaint and filed a motion to dismiss. Without answering, the remaining defendants filed motions to dismiss. The district court held that Eleventh Amendment immunity, judicial immunity, and qualified immunity protected defendants from suit. In so doing, the court held that the complaint failed to state a federal claim against any of the defendants. The court declined to

exercise supplemental jurisdiction over the remaining state claims and dismissed them without prejudice.

## II

On appeal, Ms. Calderon contends the allegations in her complaint were sufficient to state a claim. We review de novo the district court's dismissal for failure to state a claim. *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir.1998). Such dismissal "is inappropriate unless [p]laintiff can prove no set of facts in support of [her] claims that would entitle [her] to relief." *Id.* We must accept all factual allegations in the complaint as true and interpret all inferences in the light most favorable to the plaintiff. *See id*; FED. R. CIV. P. 12(b)(6).

The district court held that the Eleventh Amendment bars Ms. Calderon's damage action against the State of Kansas and Ms. Chronister in her official capacity. Ms. Calderon does not contest that conclusion here but asserts that she is nevertheless entitled to sue Ms. Chronister for prospective injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908), which allows parties to seek such relief against state officials for their unconstitutional acts. The issue, however, is whether Ms. Calderon's complaint stated a federal constitutional violation for which she sought prospective injunctive relief.

Ms. Calderon concedes that her complaint never expressly requested prospective injunctive relief. She argues instead that this omission should not be fatal because her alleged violations entitled her to injunctive relief as a matter of justice. *See* Fed. R. Civ. P. 54(c) ("[E]very final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."). She cites *Pension Benefit Guar. Corp. v. East Dayton Tool & Die Co.*, 14 F.3d 1122 (6th Cir. 1994), for the proposition that omissions in a prayer for relief do not bar redress as long as the pleading provides notice of and grounds for the underlying claims. The threshold question is thus whether Ms. Calderon's complaint gave any indication that she might be entitled to injunctive relief for ongoing federal constitutional violations by state officials.

In her complaint, Ms. Calderon complained only of a series of questions Judge Bacon and SRS asked her that "elicited information relating to family planning issues and her decisions to procreate, *viz*, the use of norplant . . ., information relating to the plaintiff's race, national origin, and citizenship . . . [and] socioeconomic status as it relates to the plaintiff's ability to care for her children." Aplt. App. at 3. We are not told the manner in which the line of questioning allegedly violated any of Ms. Calderon's rights or would warrant any kind of injunctive relief.

The rest of the complaint asserted vaguely that Ms. Calderon was subjected to the "described treatment," which we take to mean the line of questioning, "because of her gender (female), race (Hispanic), national origin (Mexico), citizenship (undetermined), and socioeconomic status (at or below the national poverty level);" that the facts "were used to deprive [her] of her rights, privileges and immunities secured by the Constitution and the laws of the United States" in unspecified ways; and that defendants violated her "liberty interest in the security of her person, her rights to equal protection, her rights to due process of law, and her privilege against self-incrimination under the Fourth, Fourteenth and Fifth Amendments." *Id.* at 4. These allegations provided no indication that prospective injunctive relief would ameliorate the alleged violations, which had already occurred.

Furthermore, the only harm Ms. Calderon alleged was her own "substantial and permanent emotional injury, medical expenses and other damages," and the damages requested were "in excess of $8,000,000.00." *Id.* at 4-5. Although a court might speculate that the heart of the complaint was to adjust child custody, no court has a duty to read this interpretation from the litigant's mind, *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994), especially in light of the fact that Ms. Calderon never mentioned the children in either her allegations of misconduct, the resulting harm, or the requested remedy.

In the most liberal construction of the complaint, we are unable to discern the basis for Ms. Calderon's claims beyond any embarrassment the questions may have caused her. We cannot deduce any grounds for a federal constitutional violation or for injunctive relief except to enjoin questioning. As the questioning was completed and there was no indication of further questioning, injunctive relief would have been inappropriate.

Notably, Ms. Calderon offered nothing more in her Memorandum in Opposition of Defendant's Motion to Dismiss to indicate a constitutional violation that would have entitled her to any relief, much less prospective injunctive relief. In addition to repeating information in the complaint, the Memorandum asserted that Judge Bacon attempted to regulate contraception and immigration. *See* Aplt. App. at 12. Ms. Calderon stated no facts at all to support these allegations, failed to explain the nexus between the judge's questions and the alleged act of regulating Ms. Calderon, and did not assert that the attempt to regulate was ongoing. Thus, neither Ms. Calderon's Memorandum nor her complaint specified any constitutional violation that would have entitled her to relief. The district court did not err in holding that Ms. Calderon had not stated a claim against Ms. Chronister under the doctrine of *Ex parte Young*.

Ms. Calderon contends Judge Bacon was not entitled to judicial immunity because the judge's questions regarding Ms. Calderon's citizenship were clearly

beyond the scope of her jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"). This argument is meritless. The Kansas Code for Care of Children grants state court judges jurisdiction over child custody proceedings, *see* KAN. STAT. ANN. § 38-1503, and authorizes judges to consider a variety of factors in determining which placement will best serve the child's welfare, *id.* § 38-1562. Even assuming arguendo that some of Judge Bacon's questions were inappropriate, she clearly acted in her judicial capacity pursuant to the code's jurisdictional grant. The district court therefore correctly dismissed Ms. Calderon's action against Judge Bacon under the doctrine of judicial immunity.

The district court also dismissed all claims against Ms. Chronister in her individual capacity based on qualified immunity. Under this doctrine, government officials are immune from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "When the defense of qualified immunity has been raised by the defendant, the plaintiff then has the burden to show with particularity facts and law establishing the inference that the defendants violated a constitutional right."

*Waiter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). As we have indicated, Ms. Calderon alleged neither facts nor law supporting an inference that Ms. Chronister violated her constitutional rights.

On appeal, Ms. Calderon asserts a number of specific contentions for the first time. She claims Judge Bacon ordered her to become a citizen in order to regain custody of her children, ordered her to marry the father of the children, ordered her to use birth control, and subjected her to self-incrimination by forcing her to answer questions about her citizenship and to disclose her illegal immigrant status. None of these allegations were made in her complaint. In fact, one cryptic allusion made in the Memorandum below that Judge Bacon attempted to regulate her immigration status made no sense in context until after Ms. Calderon revealed on appeal that she was an illegal immigrant. Since we will not consider an argument based on claims that were not before the district court, we decline to consider these new contentions. *See City of Stillwell, Okla. v. Ozarks Rural Elec. Coop.*, 166 F.3d 1064, 1073-74 (10th Cir. 1999) (declining to consider an issue not raised below); *MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir.1995) (stating that this court will not consider an issue on appeal that was not raised below).

Viewing the record below without Ms. Calderon's late allegations and revelations, we conclude that Ms. Calderon failed to state a claim for a violation

of her constitutional rights. We therefore agree with the district court that Judge Bacon was protected from suit by judicial immunity, and that Ms. Chronister was protected by the Eleventh Amendment in her official capacity and by qualified immunity in her individual capacity.

## III

Alternatively, Ms. Calderon argues that the district court abused its discretion in failing to grant her leave to amend. On the last page of her Memorandum in Opposition of Defendants' Motion to Dismiss, Ms. Calderon requested that

> should the court determine the need for facts or [that] further facts be stated with ". . . sufficient particularity to place the defendants in a position of notice as to the nature of the action against them . . ." grant leave and sufficient time in which Calderon would be ". . . permitted to cure any specified defects within the pleadings."

Apt. App. at 72. She contends the district court abused its discretion by failing to consider that statement as a motion for leave to amend her complaint and to sua sponte offer her the right to do so.

Federal Rules of Civil Procedure 15(a) provides that a party has a right to amend the pleading one time without seeking leave of court as long as the amendment occurs before a responsive pleading is served. *See* FED. R. CIV. P. 15(a); *Glenn v. First Nat'l Bank*, 868 F.2d 368, 370 (10th Cir. 1989). After a

-10-

responsive pleading, a party must seek leave of the court to amend by filing a motion. *See* Fed. R. Civ. P. 15(a)**;** 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §§ 1480-83 (2d ed.1990). If a party seeks to amend a pleading following the court's grant of a motion to dismiss, the party must first move to reopen the case under Fed. R. Civ. P. 59(e) or 60(b) and then file a motion under Fed. R. Civ. P. 15 for leave to amend pursuant to the standards set out in Fed. R. Civ. P. 7. *See Glenn*, 868 F.2d at 371.

When a party files a proper motion for leave to amend, rule 15(a) further provides "leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962)*; Brever*, 40 F.3d at 1131; *Glenn*, 868 F.2d at 371; *see generally* 6 WRIGHT ET AL., *supra,* §§ 1473 & 1483. The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits. *See Foman*, 371 U.S. at 181-82; 6 WRIGHT ET AL., *supra*, § 1473 at 521. This policy is not limitless and must be balanced against Fed. R. Civ. P. 7(b)(1), which governs the requirements for all motions and provides that any motion "shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." 6 WRIGHT ET AL., *supra*, § 1483 at 582. By requiring notice to the court and the opposing party of the basis for the motion, rule 7(b)(1) advances the policies of reducing prejudice to either party and assuring that "the

-11-

court can comprehend the basis of the motion and deal with it fairly." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1192 at 42 (2d ed. 1990); *see also id.* § 1191 at 38.

We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion.[1] *See Brever*, 40 F.3d at 1130; *Glenn*, 868 F.2d at 371. In *Glenn*, we held it insufficient where the plaintiffs made a bare request in their response to a motion to dismiss "that leave be given to the Plaintiffs to amend their Complaint." *Glenn*, 868 F.2d at 370. We declined the plaintiffs' suggestion that we should consider that statement as a motion for leave to amend. We noted that the plaintiffs stated "no grounds let alone 'particular' grounds for the request," and that it was not "an application for an order contemplated under the rules." *Id.* Accordingly, we held that the plaintiffs' informal request had not placed a motion before the court and that the district court "committed no error in not ruling thereon." *Id.* at 371.

---

[1]To comply with the Rules of Practice and Procedure for the United States District Courts of Kansas, a motion must be accompanied by a brief or memorandum, D.Kan. Rule 7.1, and "[i]n addition, . . . [it should] set forth a concise statement of the amendment sought to be allowed, and a signed original of the proposed amended pleading [should] be attached," D.Kan. Rule 15.1. None of these formal procedures were followed in the instant case.

While in the spirit of Fed. R. Civ. P. 15(b) we have said that failure to file a formal motion is not always fatal, *see Brever*, 40 F.3d at 1130-31, *Triplett v. Leflore County*, 712 F.2d 444 (10th Cir. 1983), in each of those cases there was readily apparent notice to opposing parties and to the court of both the desire to amend and the particular basis for the amendment in accord with the purposes of rule 7(b). In *Brever*, 40 F.3d at 1130, the record showed that the plaintiff had repeatedly expressed a willingness to amend and had demonstrated particular grounds but had been misled by the district court to believe she should wait to amend until after the court disposed of motions to dismiss. In these circumstances, we held that in its dismissal the court should have reserved to the plaintiff leave to amend despite the lack of a formal motion. Similarly, in *Triplett*, 712 F.2d at 445, we accepted the plaintiff's motion to reconsider as a request to amend despite its irregularity because the motion to reconsider unequivocally gave both the district court and the opposing counsel clear notice of a request to amend and the grounds therefor. Attached to Mr. Triplett's motion to reconsider was a brief with a bold captioned title reading "REQUEST FOR LEAVE TO AMEND COMPLAINT." *Id.* In addition, the brief itself included outlined theories of Mr. Triplett's amended complaint and a section devoted to a request for leave to amend. *Id.* The total record thus clearly indicated a desire to amend as well as a demonstration of the particular grounds for the amendment.

Deriving a consistent approach from our case law, we conclude that a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it. Our conclusion does not detract from the district court's wide discretion to recognize a motion for leave to amend in the interest of a just, fair or early resolution of litigation. *See* 5 WRIGHT & MILLER, *supra*, § 1194 (2d ed. Supp. 1999). Our requirement of notice merely assures that "[w]e do not require district courts to engage in independent research or read the minds of litigants to determine if information justifying an amendment exists." *Brever*, 40 F.3d at 1131; *see Curtis Ambulance of Fla. v. Board of County Comm'rs*, 811 F.2d 1371, 1386 n.15 (10th Cir. 1987) (a court is not obligated to conduct a plaintiff's case for him when he fails to seek to amend a pleading).

Our holding today resolves any substantive tension between our holdings in *Glenn*, 868 F.2d 368, *Triplett*, 712 F.2d at 445, and a footnote in *Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 596-97 n.9 (10th Cir. 1994). By contrast to *Glenn*, footnote nine in *Ramirez* determined that the two submissions presented to the district court, equally paltry as the *Glenn* submission, did amount to a request for leave to amend. The statements consisted in their totality of one sentence in the Opposition to the Defendants' Motion to Dismiss that

-14-

> should [the district court] determine that Plaintiff has failed to state facts with sufficient particularity to place the Defendants on notice of the nature of the action brought against them, Plaintiffs would have this Court grant sufficient time in which Plaintiffs would be permitted to cure any specified defects within the pleadings,

and one sentence in their supporting brief that plaintiffs "would have leave of Court to amend their complaint to cure any deficiencies if such deficiencies are hereinafter determined to exist by the Court." *Id.* at 588 n.1. Apparently in *Ramirez*, the district court was silent regarding the request for leave to amend. Despite the limited notice and lack of grounds to support an amendment provided by the plaintiff's two submissions, we stated in footnote nine that the district court's failure to grant leave to amend was an abuse of discretion.

Relying solely on the footnote in *Ramirez*, Ms. Calderon contends she made a legitimate motion for leave to amend and argues that the district court abused its discretion in failing to grant leave after it sustained defendants' motions to dismiss. Footnote nine in *Ramirez* can be characterized as dicta, however, because we held that the plaintiff's complaint as written did in fact state a claim. *Cf. Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir. 1993). In any event, procedurally *Glenn* controls. As the earlier opinion, *Glenn* is binding precedent over subsequent deviations absent en banc reconsideration or a contrary decision by the Supreme Court. *See Clymore v. United States*, 164 F.3d 569, 573 n.5 (10th Cir. 1999); *Haynes v. Williams*, 88 F.3d 898, 900 n. 4 (10th Cir.1996).

-15-

Applying the *Glenn-Triplett* standard of adequate notice to the courts and the opposing party, therefore, we hold that Ms. Calderon's single sentence, lacking a statement for the grounds for amendment and dangling at the end of her memorandum, did not rise to the level of a motion for leave to amend. Because a motion for leave to amend was never properly before it, the district court did not abuse its discretion in failing to address Ms. Calderon's request for leave to cure deficiencies in her pleadings. *See Brannon v. Boatman's First Nat'l Bank*, 153 F.3d 1144, 1150 (10th Cir. 1998) (court needn't address a motion never placed before it); *Dahn v. United States*, 127 F.3d 1249, 1252 (10th Cir. 1997) (same).

In conclusion, we **AFFIRM** the district court's dismissal of Ms. Calderon's complaint for failure to state a claim.