**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 19 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

MELISSA TORRES; CLIFFORD TORRES,

    Plaintiffs-Appellants,

v.

PUEBLO BOARD OF COUNTY
COMMISSIONERS,

    Defendant-Appellee.

No. 98-1412
(D. Colo.)
(D.Ct. No. 97-S-1613)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRORBY**, **McKAY**, and **BRISCOE**, Circuit Judges.

_____

Clifford and Melissa Torres, husband and wife, brought suit alleging

violations of 42 U.S.C. § 1983 and the Colorado Constitution.[1] They contend

Mrs. Torres was terminated from her employment as a benefits specialist with the

County of Pueblo in retaliation for their union organizing activities and Mrs.

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] Defendants removed the action to the United States District Court for the District of Colorado based on federal question jurisdiction.

Torres' marital association with Mr. Torres – rights protected by the First Amendment. The Torreses appeal (1) the district court order dismissing Mr. Torres' First Amendment claims and Mrs. Torres' claim against defendant Jeanette O'Quin, and (2) the district court order granting the Board of County Commissioners ("the Board") summary judgment against Mrs. Torres' First Amendment claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm both orders.

BACKGROUND

Mrs. Torres began working for Pueblo County in January 1991. When terminated in October 1996, Mrs. Torres was the benefits specialist, responsible for processing health insurance bills and administering the life insurance and other benefit programs for county employees. Her supervisor was defendant Jeanette O'Quin, the Director of the Department of Human Resources.

Mr. Torres has been a Pueblo County employee since July 1991. He works in the Facilities Department as a maintenance worker. *Id.* Mr. Torres was the principal organizer in unionizing that department in 1996, with encouragement and assistance from Mrs. Torres. The Torreses allege Mrs. Torres was terminated in retaliation for her and Mr. Torres' union organizing activities. Defendants

counter that Mrs. Torres' employment was terminated for "11 occurrences of falsifying telephone logs for long distance calls and 17 occurrences of placing unauthorized personal long distance calls."

## ANALYSIS

Rule 12(b)(6) Dismissal of Mr. Torres' Claims

The district court dismissed Mr. Torres from this case in light of the Torreses' concession their complaint failed to allege a valid claim against either defendant for the disciplinary action against Mr. Torres. [2] In their motion for reconsideration before the district court, and now on appeal, the Torreses argue the district court misconstrued the complaint as well as the intended scope of their concession. The Torreses maintain that Mr. Torres pleaded and has not conceded a First Amendment claim *vis-à-vis* his marital association with Mrs. Torres and the financial injury he suffered as a result of her termination in retaliation for his union organizing activities.

---

[2] The Board approved a six-day suspension of Mr. Torres for allegedly taking forms from the Arts Center budget office without permission from his supervisor, for not following the proper chain of command "by discussing Capital request forms with [the] County Budget office," and for failing "to properly call off work." The Board ultimately rescinded Mr. Torres' suspension for lack of a factual basis.

We review the legal sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6) de novo. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999.) "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 1236 (quotation marks and citations omitted). We must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the Torreses. *Id*. While we must accept reasonable inferences derived from well-pleaded facts, we need not accept mere conclusions characterizing pleaded facts or "unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990) (quotation marks and citation omitted).

The Torreses unequivocally conceded "the complaint does not allege a valid claim against either Defendant for the disciplinary action against Clifford Torres." Moreover, the law is well settled Mr. Torres cannot utilize § 1983 as a vehicle for derivative liability stemming from alleged discrimination directed at Mrs. Torres. *Trujillo v. Board of County Comm'rs*, 768 F.2d 1186, 1187 (10th Cir. 1985); *cf. Horstkoetter v. Department of Pub. Safety*, 159 F.3d 1265, 1279-80 (10th Cir. 1998) (stating wives of highway patrol troopers ordered to remove

political signs from private residence yards had standing only to raise the same claims as their husbands, not independent claims). Consequently, the only cognizable claim Mr. Torres could assert under the circumstances would be one of marital association, *see Trujillo*, 768 F.2d at 1188-90; *cf. Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999) (holding public employee could maintain claim based on allegation that he was fired because of his wife's employment discrimination lawsuit against state, in violation of his First Amendment right of intimate association) – a claim we believe Mr. Torres fully articulated for the first time on appeal. Nevertheless, even liberally construing the Torreses' complaint to vaguely assert a marital association claim, we hold Mr. Torres utterly failed to allege facts sufficient to support such claim. In this circuit "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983." *Trujillo*, 768 F.2d at 1190; *see also Bryson*, 905 F.2d at 1394 ("Nowhere in the complaint is there an allegation that any claimed acts or omissions, however intentional, occurred with the specific intent on the part of the defendants to deprive the plaintiffs of their rights of association with the victims."). The Torreses' complaint does not allege intent on the part of defendants to deprive them of their protected marital relationship. Therefore, the district court properly

dismissed Mr. Torres' claims. [3]


Mrs. Torres' First Amendment Claims

The district court granted summary judgment to the Board on Mrs. Torres' First Amendment claims, applying the four-step analysis derived from *Pickering v. Board of Educ.*, 391 U.S. 563 (1968), to her free association as well as her free speech claims. The district court concluded (1) neither Mr. nor Mrs. Torres' speech involved matters of public concern; (2) the defendants' interests in confidentiality and the propriety of Human Resources Department employees' conduct outweighed Mrs. Torres' alleged First Amendment interest in participating in her husband's union organizing activities; (3) Mrs. Torres failed

---

[3] Mr. Torres argues if we uphold the dismissal of his claims, the district court should have allowed him to amend his complaint. We disagree. "After a responsive pleading, a party must seek leave of the court to amend by filing a motion." *Calderon v. Kansas Dep't of Social & Rehabilitation Serv.*, 181 F.3d 1180, 1185 (10th Cir. 1999) (citing Fed. R. Civ. P. 15(a)). Mr. Torres' statement at the end of his Motion for Reconsideration seeking "[i]n the alternative ... leave to amend the complaint to plead with greater specificity the causal relationship between the Plaintiffs' protected activities and [Ms. O'Quin's] motive for causing Melissa Torres to be terminated from her employment," stated no grounds, let alone any particular grounds, for the request, and made no reference to a claim for interference with Mr. Torres' right of marital association. Accordingly, that statement did not constitute a motion as contemplated by Fed. R. Civ. P. 7(b)(1). *Id*. at 1186. Because a motion for leave to amend was never properly before it, we hold the district court did not abuse its discretion in failing to address the Torreses' request for leave to cure deficiencies in their complaint. *See id*. at 1187.

to show her speech was a substantial or motivating factor for her discharge; and (4) the Board sufficiently demonstrated it would have taken the same action against Mrs. Torres even in the absence of her union organizing activities.

The Torreses argue the district court misapplied the *Pickering* test, overlooked Mrs. Torres' marital association claim, and failed to allow a jury to weigh the evidence and make appropriate credibility assessments.

> We review the grant of summary judgment de novo, using the same standard as did the district court. In First Amendment cases, an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression. Accordingly, summary judgment is appropriately granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We view the evidence in the light most favorable to the non-moving party.

*Barker v. City of Del City*, 215 F.3d 1134, 1137 (10th Cir. 2000) (quotation marks and citations omitted). Applying this standard, we affirm, albeit for slightly different reasons than those articulated by the district court in granting summary judgment. *Colorado Flying Academy, Inc. v. United States*, 724 F.2d 871, 880 (10th Cir. 1984) (explaining this court may affirm district court's judgment on grounds not relied on by district court if supported by the record), *cert. denied*,

476 U.S. 482 (1986).

*Associational Rights*

Mrs. Torres asserts claims of retaliation in violation of her First Amendment right of free association, citing specifically her right to participate in union-related activities and her right to marital association. It is true the Constitution protects an individual's right to associate both "expressively" and "intimately." *See City of Dallas v. Stanglin*, 490 U.S. 19, 23-24 (1989). It is also true courts are split as to whether the *Pickering* analysis applies to freedom of association claims. *Balton v. City of Milwaukee*, 133 F.3d 1036, 1039-40 (7th Cir. 1998); *Gregorich v. Lund*, 54 F.3d 410, 414 n.4 (7th Cir. 1995); *see also Schalk v. Gallemore*, 906 F.2d 491, 498 n.6 (10th Cir. 1990) (applying public concern test to identical free speech/free association claims in context of this case, but recognizing that the public concern test "may be an inapt tool of analysis" in other public employee/free association contexts). We need not decide that issue here, however, because Mrs. Torres' political association claim as it pertains to her "union activity" [4] suffers a more fundamental flaw. Namely,

_____

[4] In mid-March 1996, Mrs. Torres suggested that Mr. Torres form a union of Facilities Department employees. In May 1996, Mrs. Torres called the local office of the American Federation of State, County and Municipal Employees ("the Union") to inquire about the procedures for forming a union and relayed the information she received to her husband. Mrs. Torres later attended a union rally. On August 7 and 13, Mrs. Torres went

Mrs. Torres was not organizing or joining a union on her own behalf. She simply was assisting her husband's efforts. Indeed, Mrs. Torres claims no membership in or personal affiliation with the Union, except insofar as she is married to Mr. Torres.

We agree Mrs. Torres has a right not to be discriminated against because of her *husband's association* with the Union. That right, however, is better asserted in the context of a marital association or free-speech claim. *See Adler*, 185 F.3d at 44. Any "association" Mrs. Torres has with Mr. Torres' union is simply too attenuated to warrant the protection she seeks. *Cf. Stanglin*, 490 U.S. at 25 (ruling the Constitution does not protect a "generalized right of 'social association'"); *Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545-50 (1987) (discussing the scope of associational rights protected by the First Amendment *vis-à-vis membership* in Rotary International). We decline the apparent invitation to consider any union-related activity per se deserving of First Amendment/free association protection. On the record presented here, we hold Mrs. Torres has failed to identify a union-related

---

to the Clerk and Recorder's office, during office hours, to listen to tapes of public Board meetings to determine if the Board had discussed the Union's request for an election. Here again, she simply intended to pass the information along to her husband.

associational right protected under the First Amendment.

With regard to the alleged violation of Mrs. Torres' right to marital association, Mrs. Torres argues that she need prove nothing more than she was terminated because of her marital relationship with Mr. Torres, and that she has presented sufficient evidence of animosity toward Mr. Torres' union activities to create an inference she was terminated due to her marital relationship with her husband. Such is not the law of this circuit. As noted above, a requisite element of a marital association claim is the allegation and proof of a specific intent to deprive the plaintiffs of their marital relationship. *See Trujillo*, 768 F.2d at 1190. As further noted, the Torreses made no such allegation. Nor did Mrs. Torres provide any evidence on summary judgment to demonstrate the defendants intended to interfere with her marriage. Her marital association claim therefore fails.

*Free Speech Rights*

To the extent Mrs. Torres might avoid the flaws in her free association claims by characterizing her conduct as an exercise of free speech, the *Pickering*

analysis clearly controls. [5] *See Barker*, 215 F.3d at 1137 ("Where a government employer takes adverse action because of an employee's exercise of his or her right of free speech, we apply the balancing test from *Pickering v. Board of Educ*." (quotation marks and citations omitted).). Applying *Pickering*, we agree with the district court that Mrs. Torres' speech did not involve a matter of public concern. If the speech in question does not address a matter of public concern, there is no First Amendment violation and we need not examine the reasons for Mrs. Torres' termination. *See Connick v. Myers*, 461 U.S. 138, 146 (1983).

Mrs. Torres points to the following activities as constitutionally protected expression: "recommending (advocating) to her husband that he contact a union, gathering information on how to start a union, gathering information from public records (tapes) about why a union election had not been scheduled, and expressing support for the union to her supervisor." She argues her interest in unionizing the Facilities Department was broader than a narrow self-interest

---

[5] The *Pickering* analysis prescribes four inquiries: (1) does the speech in question involve a matter of public concern; (2) if so, does the employee's interest in the expression outweigh the government's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace; (3) was the speech a substantial factor driving the challenged governmental action; and (4) if so, can the employer show it would have taken the same employment action against the employee even in the absence of the protected speech. *Barker*, 215 F.3d at 1137.

because she did not work in that department. She further claims she was concerned for all the employees in that department, not just her husband. The real crux of Mrs. Torres' argument is her belief union organizing activity or expression, by definition, touches on matters of public concern, and therefore deserves First Amendment protection.

We are unwilling to hold that an employee's speech or activity touches on a matter of public concern merely because it is union-related. *See Boals v. Gray*, 775 F.2d 686, 693 (6th Cir. 1985). Instead, we apply well-established precedent defining "matter[s] of public concern" as those matters which can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. "To be protected speech, the expression must sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." *Withiam v. Baptist Health Care of Okla., Inc.*, 98 F.3d 581, 583 (10th Cir. 1996) (quotation marks and citation omitted). Stated differently, "speech that seeks to expose improper operations of the government or questions the integrity of government officials clearly concerns vital public interests." *Curtis v. Oklahoma City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1212 (10th Cir. 1998) (quotation marks, citations and alteration omitted). "Speech concerning individual personnel disputes or internal policies will typically not

-12-

involve public concern." *Id.* (citation omitted). The content of the speech is the crux of our public concern inquiry. *See Withiam*, 98 F.3d at 583.

Considering, as we must, the content, form, motive and context of Mrs. Torres' communications, as revealed by the whole record, *see David v. City & County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996), *cert. denied*, 522 U.S. 858 (1997), we conclude the "speech" she claims is protected did not inform public debate concerning government conduct or otherwise address matters of political or social concern to the community. As the district court aptly noted, Mr. and Mrs. Torreses' concerns and union-related speech pertained specifically to the management and working conditions in the Facilities Department. Their union organizing effort was motivated by their desire, as county employees, to change Mr. Torres' working conditions. Mr. and Mrs. Torres made no allegation and presented no evidence to suggest the Facilities Department was guilty of wrongdoing or malfeasance, or was neglecting its responsibilities to the public. Accordingly, Mrs. Torres' First Amendment/free speech claim fails.

Qualified Immunity

The district court determined Ms. O'Quin enjoyed qualified immunity from the Torreses' claims because, applying a heightened pleading standard, the

Torreses failed to allege facts sufficient to "sustain a conclusion that Defendant O'Quin violated clearly established statutory or constitutional rights of which a reasonable person would have known." As the district court noted, the complaint alleged only that defendant O'Quin "requested approval from the Board of County Commissioners to terminate" Mrs. Torres and "gave notice to" Mrs. Torres regarding her termination.

The Torreses argue (1) the heightened pleading standard "cannot be squared with the notice pleading requirement in [Fed.] R. Civ. P. 8(a) and Supreme Court precedent, especially *Crawford-El v. Britton*, 523 U.S. 574 (1998)"; (2) the complaint alleged facts sufficient to establish a causal connection between Ms. O'Quin's conduct and the alleged discrimination; and (3) the district court alternatively should have provided the Torreses an opportunity to amend their complaint.

Ultimately, to overcome Ms. O'Quin's claim of qualified immunity the Torreses must establish (1) Ms. O'Quin's actions violated a federal constitutional or statutory right, and (2) the right violated was clearly established at the time of the violation. *See Ramirez v. Department of Corrections*, ___ F.3d ___, 2000 WL 1140251, *1 (10th Cir. Aug. 11, 2000). As we held above, Mrs. Torres'

-14-

allegations of constitutional violations do not survive summary judgment. Because Ms. O'Quin did not commit a constitutional violation, she could not be denied qualified immunity. It is therefore unnecessary for us to further review the propriety of the district court's ruling concerning qualified immunity for Ms. O'Quin, or further address the Torreses' arguments regarding pleading requirements. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841-42 n.5 (1998) ("the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all").

For all the foregoing reasons, the Torreses' First Amendment claims fail against both defendants as a matter of law.

**AFFIRMED**.

Entered by the Court:

**WADE BRORBY**
United States Circuit Judge

-15-