FILED
United States Court of Appeals
Tenth Circuit

September 9, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

R. GREG CORY,

        Plaintiff - Appellant,

    v.

ALLSTATE INSURANCE;
ALLSTATE FINANCIAL SERVICES,
LLC; LUKE YANG, individually and
as agent or employee of Allstate
Insurance,

        Defendants - Appellees.

No. 08-2168

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D. Ct. No. 1:06-CV-00993-LH-ACT)**

---

Timothy L. White, Valdez and White Law Firm, Albuquerque, New Mexico,
appearing for Appellant.

M. Scott Barnard (John V. Jansonius and Patrick G. O'Brien, with him on the
brief), Akin Gump Strauss Hauer & Feld LLP, Dallas, Texas, appearing for
Appellees.

---

Before **TACHA**, **TYMKOVICH**, and **GORSUCH**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

Plaintiff-appellant R. Greg Cory filed suit against Allstate Insurance

Company and Allstate Financial Services, LLC (collectively, "Allstate") for, among other claims, breach of implied contract and defamation. The district court dismissed the implied contract claim under Fed. R. Civ. P. 12(b)(6) and entered summary judgment against him on the defamation claim. Mr. Cory appeals. We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

In September 2000, Mr. Cory entered into an Independent Contractor Agreement (the "Agreement") with Allstate that authorized him to sell and service Allstate life insurance policies and other financial services products. The Agreement expressly provided that Mr. Cory was an independent contractor and not an Allstate employee; it gave him sole and exclusive responsibility for operating his own agency, including hiring, training, and supervising his own employees. The Agreement stated that it could "not be modified, except by a written agreement" and specifically explained that "no oral statements, representations, or agreements will be effective to modify this Agreement." It also gave Allstate the right to terminate it for cause at any time and without notice to Mr. Cory.

In addition, the Agreement expressly incorporated two other documents: Allstate's Exclusive Financial Specialist Independent Contractor Manual (the "EFS Manual") and the Exclusive Financial Specialist Agency Standards (the "Agency Standards"). Relevant to this case, the EFS Manual states: "you may

never falsify any state insurance department or [Allstate] documents, including applications, and you may never forge signatures . . . . [C]ooperating with others to defraud, or any other illegal or criminal acts will not be tolerated." Relatedly, the Agency Standards provide that "[n]o one is allowed to sign on behalf of another person, even if it is done to accommodate a customer. . . . The unauthorized signing of a document is a forgery." Allstate policies also prohibit an independent contractor from certifying in writing that he has witnessed a customer's signature unless he has actually witnessed the signature. An important purpose of this policy is to prevent forgery.

In August 2004, an Allstate affiliate notified Allstate that two documents submitted by Mr. Cory's office contained possible signature forgeries. Allstate assigned one of its corporate security investigators, Luke Yang, to investigate the situation. During the course of Mr. Yang's investigation, Mr. Cory discussed the forgery allegations with his immediate supervisor and another management-level employee. In separate conversations, both employees told Mr. Cory that "if he didn't do it, he'd be fine, nothing bad would happen."

After discovering suspect signatures on four documents submitted by Mr. Cory's office and purportedly signed by customer Edward Dominguez, Mr. Yang interviewed Mr. Dominguez, Mr. Cory, and Mr. Cory's assistant, Kathy Logan. Mr. Dominguez stated that he did not remember signing any of the four documents and did not recognize the signatures on those documents as his own.

Mr. Cory stated that although he did not forge Mr. Dominguez's signature on any of the documents, Ms. Logan had admitted to him that she had forged both Mr. Dominguez's and Mr. Cory's signature on at least two of the documents. Mr. Cory also stated that he was responsible for supervising Ms. Logan's activities. Ms. Logan admitted that she had forged Mr. Dominguez's name on two of the documents and that she had forged Mr. Cory's name on one of them.

Following the interviews, Mr. Yang submitted the documents containing suspect signatures—along with handwriting exemplars of Mr. Dominguez, Mr. Cory, and Ms. Logan—to a certified forensic document examiner. The examiner concluded that Mr. Cory had forged Mr. Dominguez's signature on one of the documents. Thereafter, Mr. Yang drafted a summary of the evidence acquired during his investigation and e-mailed it to an Allstate regional vice president. The summary stated in pertinent part that "[t]he weight of the evidence uncovered during our investigation was sufficient to support the conclusion that Cory forged customer Dominguez's signature on [one document]. . . . Further, former Support Staff Employee Logan admitted to signing Cory's name and forging Dominguez's signature on [two other documents]." The summary concluded that evidence was sufficient "to support the conclusion that Cory breached [the Agreement]." Based on Mr. Yang's investigation, Allstate determined that Mr. Cory had violated its policies and procedures by submitting documents containing forged signatures. Allstate therefore terminated the Agreement, which ended Mr. Cory's relationship

with Allstate.

The National Association of Securities Dealers ("NASD")[1] requires securities dealers such as Allstate to submit a Form U5 Uniform Termination Notice for Securities Industry Registration ("Form U5") within thirty days of the termination of a registered representative like Mr. Cory. In response to the section on the Form U5 which asked for the "reason for termination," Allstate stated: "failure to follow firms [sic] policy and procedures due to non genuine customer signatures on account documents." Allstate also responded "yes" to the following question: "Did the individual voluntarily resign from your firm, or was the individual discharged or permitted to resign from your firm, after allegations were made that accused the individual of violating investment-related statutes, regulations, rules or industry standards of conduct?"

After reviewing the Form U5, the NASD submitted several questions to Mr. Cory to determine whether he had violated federal securities laws or NASD rules. In response, Mr. Cory admitted that he had signed as a witness to Mr. Dominguez's signature on a form without actually witnessing Mr. Dominguez sign the form and that he was "guilty of sloppy supervision on the Dominguez case." Mr. Cory has also acknowledged under oath that his signing as a witness

---

[1]On July 30, 2007, the NASD changed its name to the Financial Industry Regulatory Authority ("FINRA"). Because FINRA was known as the NASD during the relevant time period applicable to this appeal, and because the parties refer to the entity as the NASD in their briefs, this opinion likewise refers to it as the NASD.

to Mr. Dominguez's signature was wrong, that it constituted a violation of Allstate's policies, and that he was responsible for his employees. Although the NASD ultimately did not find any violations of federal securities laws or NASD rules, Mr. Cory is required to self-report the NASD investigation to prospective employers.

In June 2006, Mr. Cory filed suit against Allstate in New Mexico state court for, among other claims, breach of implied contract and defamation.[2] After successfully removing the case to federal district court, Allstate filed a motion to dismiss all claims, except the defamation claim, under Fed. R. Civ. P. 12(b)(6). The district court granted the motion. After discovery, Allstate moved for summary judgment on Mr. Cory's remaining defamation claim. The district court ruled that Allstate was entitled to summary judgment because the statements Allstate made in the Form U5 were true—and thus not defamatory—and no genuine issue of material fact remained for trial.[3]

On appeal, Mr. Cory argues that the district court's grant of summary judgment was improper because the "substance, gist or sting" of Allstate's statements in Form U5 is false. He also asserts that the court erred in dismissing

---

[2]Mr. Cory also asserted multiple claims against Mr. Yang. Each of those claims was subsequently either dismissed by the district court or voluntarily withdrawn by Mr. Cory; none are at issue in this appeal.

[3]The district court applied New Mexico law in granting Allstate's motion to dismiss and in granting its motion for summary judgment.

his claim for implied breach of contract by failing to regard the statements made to him by his supervisors in the light most favorable to him.

## II. DISCUSSION

A.    Summary Judgment: Defamation Claim

"We review summary judgment decisions de novo, applying the same legal standard as the district court." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1104 (10th Cir. 2008). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

Under New Mexico law, the elements of a defamation action include: "a defamatory communication, published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff." *Newberry v. Allied Stores, Inc.*, 773 P.2d 1231, 1236 (N.M. 1989); *see also* N.M. Civ. UJI 13-1002 (listing all nine elements of defamation). "Defamatory communications are those which tend to expose a person to contempt, to harm the person's reputation, or to discourage others from associating or dealing with [him or her]." N.M. Civ. UJI 13-1007.

When a private-party plaintiff files suit for defamation, "[t]he traditional

rule in New Mexico is that truth is an affirmative defense," *Newberry*, 773 P.2d at 1237, and substantial truthfulness is sufficient. *See Ammerman v. Hubbard Broadcasting, Inc.*, 572 P.2d 1258, 1262 (N.M. Ct. App. 1977). Minor inaccuracies will not preclude the defense "so long as the substance, the gist, the sting of the [defamatory] charge can be justified." *Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1146 (10th Cir. 2000) (quotations omitted).

After reviewing the record and drawing all reasonable inferences therefrom in the light most favorable to Mr. Cory, we conclude that the district court appropriately entered summary judgment against Mr. Cory. In Section 3 of Form U5, Allstate stated that its reason for terminating the Agreement was Mr. Cory's "failure to follow firms [sic] policy and procedures due to non genuine customer signatures on account documents." Mr. Cory has acknowledged that: (1) non-genuine signatures appeared on account documents his agency submitted to Allstate; (2) he signed as a witness to a signature on at least one of those documents without actually witnessing the signature; (3) signing as a witness to a signature without witnessing the signature constitutes a violation of Allstate's policy; and (4) a main purpose of the policy is to avoid the forgery of customer signatures. Mr. Cory has therefore acknowledged that Allstate's statement in Section 3 is substantially true and that "the substance, the gist, the sting of the [defamatory] charge can be justified." *Id.*

-8-

Allstate's affirmative response in Section 7F is also substantially true. Section 7F asks: "Did the individual voluntarily resign from your firm, or was the individual discharged or permitted to resign from your firm, after allegations were made that accused the individual of violating investment-related statutes, regulations, rules or industry standards of conduct?"  A certified forensic document examiner and Mr. Yang each alleged that Mr. Cory had committed forgery, and a forgery clearly violates industry standards of conduct.  In addition, Mr. Yang alleged that Ms. Logan—who pursuant to the Agreement was conducting business "on [Mr. Cory's] behalf"—had admitted she forged Mr. Dominguez's signature on two documents.  Because Allstate terminated the Agreement after these allegations were made, Allstate's affirmative response in Section 7F was substantially true.  Accordingly, the district court appropriately determined that no genuine issue existed as to any material fact related to Mr. Cory's defamation claim.  Its entry of summary judgment for Allstate was therefore proper.

B.    Rule 12(b)(6) Dismissal: Breach of Implied Contract

We review de novo a district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), applying the same standard applied by the district court. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).  "[W]e assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d

1174, 1177 (10th Cir. 2007). To survive a motion to dismiss, a plaintiff must "nudge his claims across the line from conceivable to plausible." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (alterations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Mr. Cory claims that Allstate breached an implied contract not to terminate him. The only factual allegations supporting this claim are that two Allstate employees told Mr. Cory that "if he didn't do it, he'd be fine, nothing bad would happen." We conclude that Mr. Cory has failed to articulate a plausible claim on which relief can be based. Mr. Cory asserts that the statements are analogous under New Mexico law to promises not to fire an at-will employee except for cause. In New Mexico, an employer's oral promise not to terminate an at-will employee except for cause "may be sufficient to create an implied contract." *Kestenbaum v. Pennzoil Co.*, 766 P.2d 280, 284 (N.M. 1988). The promise must, however, be sufficiently explicit to raise a reasonable expectation of contractual rights. *Hartburger v. Frank Paxton Co.*, 857 P.2d 776, 783 (N.M. 1993); *see also Ruegsegger v. Western N.M. Univ. Bd. of Regents*, 154 P.3d 681, 687 (N.M. Ct. App. 2006). "The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." *Hartburger*, 857 P.2d at 783.

Mr. Cory's allegation in his first amended complaint that two employees told him "if he didn't do it, he'd be fine, nothing bad would happen" is not sufficiently definite, specific, or explicit to give him a reasonable expectation of an implied contractual right that modified the express terms of the Agreement. Indeed, Mr. Cory himself recognizes that the statements may have constituted nothing more than "indirect references" to the notion that he would not be fired if he did not commit forgery. Conversely, the Agreement expressly stated that it could "not be modified, except by a written agreement" and that "no oral statements, representations, or agreements will be effective to modify this Agreement." The Agreement also gave Allstate the express right to terminate it for cause at any time and without notice to Mr. Cory. Mr. Cory therefore could not have reasonably expected that after Allstate began investigating him for forgery, Allstate limited its right to terminate the Agreement through the nonspecific statements of two employees that "nothing bad would happen." Accordingly, the district court appropriately granted Allstate's motion to dismiss Mr. Cory's claim under Fed. R. Civ. P. 12(b)(6).

### III. CONCLUSION

For the foregoing reasons, we AFFIRM both the district court's entry of summary judgment against Mr. Cory and its decision to dismiss Mr. Cory's claim for breach of implied contract.