FILED
United States Court of Appeals
Tenth Circuit

October 19, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

GEORGE MILAM HALL,

          Plaintiff - Appellant,

v.

DOUGLAS P. WITTEMAN,
Kansas State Official, in his official
capacity as Coffey County Attorney
and individually and personally;
PHILLIP M. FROMME, individually
and personally; COFFEY COUNTY
COMMISSIONERS, individually and
personally; COFFEY COUNTY,
KANSAS, ANDERSON COUNTY
COMMISSIONERS, individually and
personally; COFFEY COUNTY BAR
ASSOCIATION, individually and
personally; JAMES R. CAMPBELL,
as Attorney for the Anderson County
Commissioners and individually and
personally; CITY OF GARNETT,
KANSAS, TERRY SOLANDER,
individually and personally; BRAD
JONES, individually and personally;
BRIAN K. JOY, individually and
personally; BRYAN M. HASTERT,
individually and personally; LINDA
MCMURRAY, individually and
personally; THOMAS ROBRAHN,
individually and personally; BRENDA
KELLEY, individually and personally;
STEPHEN J. SMITH, individually and
personally; SCOTT RYBURN,
individually and personally; ROBERT
GREEN, individually and personally;

Nos. 08-3251 & 08-3299

CATHERINE FAIMON; and COFFEY
COUNTY REPUBLICAN,

Defendants - Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**[*]
**(D.C. NO. 5:07-CV-04128-SAC-KGS)**

---

George M. Hall, pro se.

Steve Phillips, Assistant Attorney General, Office of Attorney General Steve Six,
Topeka, Kansas, and Toby Crouse, Foulston Siefkin LLP, Overland Park, Kansas,
for Defendants - Appellees.

---

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

---

**HARTZ**, Circuit Judge.

---

George Milam Hall submitted to a local newspaper, the Coffey County

Republican ("The Republican"), an advertisement opposing the election bid of

Judge Phillip M. Fromme. He paid to have the ad run on two occasions. The

paper ran the ad the first time but not the second, instead running an ad

supporting Judge Fromme, which was paid for and signed by a number of

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

attorneys, including Coffey County Attorney Douglas Witteman. Mr. Hall filed suit in the United States District Court for the District of Kansas against The Republican, Judge Fromme, the signatory attorneys, and a few others. His complaint included claims under federal civil-rights laws (42 U.S.C. §§ 1983 and 1985) and the federal Racketeer Influenced and Corrupt Organization (RICO) statute (18 U.S.C. §§ 1961–68), as well as a number of state-law claims. The heart of the allegations in the complaint's 153 paragraphs is that after Mr. Hall placed his advertisement, the defendants unlawfully convinced the paper's publisher to pull the second running of his advertisement in favor of their own, which contained defamatory remarks about him. This action, he contends, violated his right of free speech under the First Amendment, as applied to the states under the Fourteenth Amendment, as well as his Fourteenth Amendment right to equal protection of the law.

The district court dismissed Mr. Hall's federal claims for failure to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), and denied his motion to amend his complaint. It declined to exercise supplemental jurisdiction over his state-law claims. Mr. Hall now appeals. We have jurisdiction under 28 U.S.C. § 1291[1] and affirm. His civil-rights claims fail

---

[1]      Mr. Hall has filed two notices of appeal giving us jurisdiction. The first, in No. 08-3251, was premature, but our jurisdiction over that appeal ripened upon the district court's October 1, 2008, order finally adjudicating all claims against all parties. *See Lewis v. B.F. Goodrich, Co.*, 850 F.2d 641, 645 (10th Cir. 1988).
(continued...)

because he did not allege state action, and his RICO claims fail because he did not allege a threat of continuing racketeering activity.

## I.    BACKGROUND

Because we are reviewing a dismissal under Rule 12(b)(6), we assume the truth of the properly alleged facts in Mr. Hall's complaint. *Cory v. Allstate*, ___ F.3d ___, No. 08-2168, 2009 WL 2871541, at *4 (10th Cir. Sept. 9, 2009). In the fall of 2006, Mr. Hall campaigned against Judge Fromme's retention in the election to be held that November. (His displeasure with Judge Fromme appears to stem from the manner in which Judge Fromme presided over litigation involving Mr. Hall's mother.) As part of this campaign, Mr. Hall placed an advertisement in The Republican. He paid the paper to run the ad on October 31 and November 3, but the paper published the ad only on October 31. On November 3, The Republican, instead of carrying Mr. Hall's ad, ran an advertisement placed by a group of attorneys who belonged to the Coffey County Bar Association (the "Responsive Ad"). The Responsive Ad was critical of Mr. Hall and called into question his motives in opposing Judge Fromme's retention. It was paid for and signed by defendants Stephen Smith, James Campbell, Douglas Witteman, Thomas Robrahn, Linda McMurray, Brenda Kelley, Brad Jones, and Bryan Hastert (the "Bar Association Defendants"), each

[1](...continued)
Mr. Hall filed the second notice of appeal, in No. 08-3299, after the district court had entered its final judgment.

-4-

of whom, except Mr. Witteman, signed the Responsive Ad as "Attorney at Law."

R., Vol. 1 Doc. 1 at 13. Mr. Witteman signed using his title as "Coffey County

Attorney." *Id.*

Mr. Hall requested Mr. Witteman, in his capacity as Coffey County

Attorney, to prosecute the Bar Association Defendants and others for their actions

in placing the advertisement. He also appeared before the Coffey County

Commissioners to discuss their potential liability for Mr. Witteman's actions.

Neither Mr. Witteman nor the Commissioners took any action in response.

On November 2, 2007, Mr. Hall filed his 36-page, 9-count complaint in

federal district court. Included as defendants in the complaint were the Bar

Association Defendants, Judge Fromme, and The Republican and some of its

personnel, as well as various other entities and individuals (including local

governments and their officials) whose connection to the alleged conspiracy is not

entirely clear from the complaint. In addition to the federal civil-rights and RICO

claims, Mr. Hall's complaint asserts state-law causes of action for invasion of

privacy, defamation, negligent and intentional infliction of emotional distress,

tortious interference with contract, and fraud. "Mr. Hall's theory of the case," as

he describes it in his opening brief on appeal, "is that [the defendants] violated

his civil rights by intimidating and coercing a local newspaper from running a

political advertisement submitted by Mr. Hall, and for which he paid." Aplt. Br.

at 3.

The defendants moved to dismiss the complaint under Rule 12(b)(6), arguing primarily that Mr. Hall had failed to state a federal cause of action. The district court agreed. In orders dated August 6 and October 1, 2008, it concluded that the complaint failed to allege the requisite state action to support a § 1983 claim, and for various reasons failed to state claims under § 1985 and RICO. It dismissed those claims with prejudice and declined to exercise supplemental jurisdiction over the state-law claims, dismissing them without prejudice. Mr. Hall now challenges the court's dismissal of his federal claims.

## II.    DISCUSSION

We review de novo the dismissal of a complaint under Rule 12(b)(6). *See Christy Sports, LLC v. Deer Valley Resort Co.,* 555 F.3d 1188, 1191 (10th Cir. 2009). "In doing so, we ask whether there is plausibility in the complaint. The complaint does not need detailed factual allegations, but the factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations, brackets, and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

*Iqbal* stressed that it is not enough for the plaintiff to plead facts "merely consistent" with the defendant's liability. *Id.* (internal quotation marks omitted). Also, "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id.* *Iqbal* suggested a two-step approach. First, the court "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 1951. Then it "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.*

Mr. Hall's pro se status entitles him to a liberal construction of his pleadings. *See Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007). Nonetheless, "this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janner*, 425 F.3d 836, 840 (10th Cir. 2005) (brackets and internal quotation marks omitted).

### A.   42 U.S.C. § 1983

"To state a claim under [42 U.S.C.] § 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Private persons may be said to act "'under color of' state law" if they are "jointly engaged with state officials in the challenged action." *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). But "private conduct that is not fairly attributable to the State is simply not actionable under § 1983, however discriminatory or wrongful the conduct is." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (citations and internal

-7-

quotation marks omitted). Mr. Hall's § 1983 claim is premised on the alleged

denial of his rights to free speech and equal protection under the Fourteenth

Amendment. A violation of the Fourteenth Amendment requires action by the

state. In the context of § 1983 claims based on violations of the Fourteenth

Amendment, as is the situation here, the under-color-of-state-law requirement in

§ 1983 is equivalent to the Fourteenth Amendment's state-action requirement.

*See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 n.8 (1999).

Although several defendants are local governments or persons holding

public office, the sole defendant on whose official position the complaint

specifically relies is Mr. Witteman. Mr. Hall appears to concede that his § 1983

claim depends entirely on Mr. Witteman's involvement in the defendants' actions.

His opening brief in this court states, "The essential theory behind Mr. Hall's

§ 1983 claims can be found in paragraphs 26 and 69 of his complaint." Aplt. Br.

at 14. The only official power mentioned in these paragraphs is that of

Mr. Witteman. Paragraph 26 alleges:

> That on or about November 1, 2006 the CBA [Coffey County Bar
> Association], FBA [Franklin County Bar Association], Solander,
> Campbell, Fromme, Ryburn and specifically Defendant Witteman,
> and all Defendant[s] *decided to use the power of Witteman's Kansas
> State Office as Coffey County Attorney* to subscribe the advertisement
> [the Reponsive Ad] under color of State Law. This separate
> predicate act, use of the power and influence of the State,
> Defendant's knew, and each of them, would hopefully persuade
> voters, "sitting on the fence", with their votes "err on the side of
> caution", and vote for Judge Fromme when;

a. The individual neutral voter may have been inclined to "stay home"; now he/she would vote for Fromme because of a "Dangerous, Criminal, Quack's advertisement may result in not retaining" a "Good Judge", or a Judge, falsely attacked by Plaintiff as Defendant's painted Plaintiff in their PAC advertisement.

b. The voters inclined not to vote for Fromme may now vote for Judge Fromme *because of Witteman, under color of State Law, (using the power of the state)* endorsing Fromme, using the theory, "if Doug (Wittemen) our County Attorney thinks Fromme is ok, that is good enough for me to vote for Fromme also".

R., Vol. 1 Doc. 1 at 9 (¶ 26) (emphases added; emphases in original omitted)

Paragraph 69 asserts the following:

> Defendants Elected State *Official Witteman using and misusing the power of his offices and taxpayer funds, under color of state law*, impermissibly interfering with Plaintiff's right to publish a second time a pre-approved advertisement by Faim[o]n, opposing Fromme's retention violated Plaintiff's free speech and equal protection of the law as guaranteed under both Kansas law and United States Constitution, the 1st and 14th Amendments accordingly.

*Id.* at 20 (¶ 69) (emphasis added).

These allegations fail to describe any use of governmental power by Mr. Witteman (or anyone else). All that the complaint contains in that regard are conclusory allegations, such as "Defendant[s] decided to use the power of Witteman's Kansas State Office as Coffey County Attorney," *id.* at 9 (¶ 26), and "Witteman using and misusing the power of his offices . . . , impermissibly interfering with Plaintiff's right to publish a second time . . . ," *id.* at 20 (¶ 69). In particular, the paragraph of the complaint alleging how the defendants

"coerced" the newspaper (through defendant Faimon, apparently the editor or publisher) not to run Mr. Hall's second ad does not include any allegation of abuse of the power of Mr. Witteman's government position. It states:

> Then on or about November 1, 2006 CBA [Coffey County Bar Association], FBA [Franklin County Bar Association], Smith, Fromme, Ryburn and Campbell after detailed discussion with Faim[o]n threatened and did use extortion, coercion of blackmail as another Predicate act in continuing CBA's racketeering activity and did extort and threaten extortion another Predicate Act by telling Faim[o]n the following, more numbered Predicate Acts of Defendant's racketeering activity under RICO:
>
> a. You will print our advertisement on November 3, 2006
> b. "Our Article is True/Truth" [Emphasis Added]
> c. You will not print or publish Plaintiff's advertisement again, a second time, on November 3, 2006, even though Plaintiff paid for it.
> d. If you do print Plaintiff's advertisement ever again CBA and Defendant's, will sue you at law.
> e. You (Faim[o]n, Payne, Republican) will refrain from printing or investigating the matters between Fromme and Plaintiff.
> f. You (Faim[o]n, Payne, Republican are not, "to put any type of news story relating to your mother (Mary M. Hall) and her situation with Judge Fromme in Anderson County, in the (Republican) newspaper at the time"
> g. You will contact Bob Hanson publisher of the Osage County Herald and tell him not to run anymore of Plaintiff's advertisement against Fromme and put Hanson on guard and ask him to seek written indemnification from Plaintiff from civil suit.
> h. We as attorneys will use our community power to hurt you personally and the Republican.
> i. Defendant's then set up a future on-going continuing enterprise, CBA predictable pattern and continuity of precedent of denying Plaintiff, Republican and the public, from their 1st Amendment Rights of free speech, and equal and due process subsumed under the 14th Amendment.

*Id.* at 10 (¶ 28) (brackets around "Emphasis Added" are in original; emphases omitted throughout paragraph).

Mr. Hall's essential concern about Mr. Witteman's official position is not that Mr. Witteman was exercising any of his official *powers*, but that his official *title* gave him prestige that would influence voters reading the Responsive Ad. This is not the stuff of which state action is made.

"[S]tate action [under the Fourteenth Amendment] requires both [1] an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' and [2] that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Sullivan*, 526 U.S. at 50 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)) (emphasis omitted). "[S]tate employment is generally sufficient to render the defendant a state actor." *Lugar*, 457 U.S. at 935 n.18. But not always. Even when state employees are performing the services for which the state pays them, they may not be state actors while performing functions that the state has no right to control. *See Polk County v. Dodson*, 454 U.S. 312 (1981) (public defender is not state actor when performing duties as counsel); *Montano v. Hedgepeth*, 120 F.3d 844, 851 (8th Cir. 1997) (prison chaplain not a state actor when performing spiritual duties). And state employees' "acts . . . in the ambit of their personal pursuits are plainly excluded." *Screws v. United States*, 325 U.S. 91,

111 (1945) (plurality opinion); *accord D.T. v. Indep. Sch. Dist. No. 16 of Pawnee County*, 894 F.2d 1176, 1186 (10th Cir. 1990) (teacher's sexual acts with students on their summer-vacation trip to raise funds for a summer camp not sponsored by school district was not state action; camp was only marginally connected to school and events occurred at a time when teacher had no duties or obligations under contract with the school district). Such conduct can be distinguished from "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," *United States v. Classic*, 313 U.S. 299, 326 (1941), which is state action even if the state employee exceeds his authority, *see Screws*, 325 U.S. at 111.

In the case before us, there is no allegation of any act by Mr. Witteman in which he abused, or even used, any power that he possessed by virtue of state law. In particular, there is no allegation that he threatened or hinted at any possibility of his future action as county attorney if The Republican ran Mr. Hall's second ad or did not run the Responsive Ad. Mr. Hall's complaint does allege that the Responsive Ad had particular clout because a voter would believe that "'if Doug (Witteman) our County Attorney thinks Fromme is ok, that is good enough for me to vote for Fromme also." R., Vol. 1, Doc. 1 at 9 (¶ 26) (emphasis omitted); *see id.* at 24 (¶ 88) (similar). But this is not a claim of use of state power. Exploiting the personal prestige of one's public position is not state action absent at least some suggestion that the holder would exercise

-12-

governmental power. *See Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997) ("[T]he mere fact that the prestige of [defendant's] office may have enhanced his influence over the Committee is not enough to convert his actions into state action."); *Federer v. Gephardt*, 363 F.3d 754, 759 (8th Cir. 2004) (defendant's being a member of Congress did not make him a government actor with respect to alleged campaign misconduct); *Tierney v. Vahle*, 304 F.3d 734, 741–42 (7th Cir. 2002) (letter to school athletic director in support of swim coach by judge on official stationery was not state action; the letter did not "create an impression that the *power* of the office [was] somehow behind the letter" (emphasis added)). No reader of the Responsive Ad could reasonably believe that Mr. Witteman was threatening to use the power of his office against those who did not vote for Fromme.

We therefore affirm the district court's dismissal of Mr. Hall's § 1983 claim on the ground that the complaint fails to allege state action.

**B.      42 U.S.C. § 1985**

Mr. Hall also seeks relief under 42 U.S.C. § 1985(3) based on an alleged conspiracy to deprive him of his rights under the Fourteenth Amendment. This claim suffers from the same defect as his § 1983 claim in that § 1985(3) does not offer protection against the type of private conspiracy alleged in his complaint. *See Brown v. Reardon*, 770 F.2d 896, 906 (10th Cir. 1985) ("'[A]n alleged conspiracy to infringe [constitutional] rights is not a violation of § 1985(3) unless

-13-

it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state.'") (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 830 (1983)); *see also Tilton v. Richardson*, 6 F.3d 683, 687 (10th Cir. 1993) ("§ 1985(3) is not applicable to private conspiracies that aim at rights that by definition only shield against State interference"). Like his § 1983 claim, Mr. Hall's § 1985 claim fails because of the absence of well-pleaded allegations that Mr. Witteman's alleged misconduct was state action.

## C.    RICO

"In order to bring a RICO claim, a plaintiff must allege a violation of 18 U.S.C. § 1962, which consists of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir. 2007) (internal quotation marks omitted). A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Those acts, commonly referred to as "predicate acts," must be violations of certain statutes. *See id.* § 1961(1). Mr. Hall's complaint alleges violations of federal mail-fraud, wire-fraud, and extortion statutes. Although the district court held those allegation to be inadequate, we need not address that issue. Even if the allegations of predicate acts were adequate, we agree with the district court that the complaint does not adequately

-14-

allege a "pattern" of racketeering activity because it fails to allege sufficient continuity to sustain a RICO claim.

"RICO is not aimed at the isolated offender." *Tal v. Hogan*, 453 F.3d 1244, 1267 (10th Cir. 2006) (internal quotation marks omitted). To satisfy RICO's pattern requirement, Mr. Hall needed to allege not only that the defendants had committed two or more predicate acts, but also "that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). As the district court concluded, however,

> At best, what plaintiff alleges is a closed-ended series of predicate acts constituting a single scheme to accomplish a discrete goal [publication of the Responsive Advertisement in lieu of Plaintiff's Advertisement] directed at only one individual [the plaintiff] with no potential to extend to other persons or entities.

R., Vol. 3 Doc. 126 at 38 (brackets in original). We agree. The district court therefore properly dismissed the RICO claim on this basis. *See Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001) (upholding dismissal when plaintiff failed to allege "the type of long-term criminal activity envisioned by Congress when it enacted RICO").

## D.    Amendment of Complaint

Finally, we reject Mr. Hall's contention that the district court abused its discretion in denying his request to amend the complaint. We have long held that such a request "must give adequate notice to the district court and to the opposing

party of the basis of the proposed amendment." *Calderon v. Kan. Dep't of Social & Rehab. Servs.*, 181 F.3d 1180, 1186–87 (10th Cir. 1999). Without this information the district court is not required to recognize, let alone grant, a motion to amend. *See id.* at 1187. The district court generously considered Mr. Hall's request in this case even though he had failed to submit a proposed amendment or a separate motion under Rule 15. Although Mr. Hall's failure to attach a proposed amendment would not in itself have justified denying him leave to amend, he nowhere explained how a proposed amendment would cure the deficiencies identified by the district court. Because "we do not require district courts to engage in independent research or read the minds of litigants to determine if information justifying an amendment exists," we conclude that the district court did not abuse its discretion in denying leave to amend in this case. *Calderon*, 181 F.3d at 1187 (brackets and internal quotation marks omitted).

## III.   CONCLUSION

The judgment of the district court is AFFIRMED.