**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 11, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOSHUA F. YOUNG,

    Plaintiff - Appellant,

v.

COLORADO DEPARTMENT OF CORRECTIONS; MOSES "ANDRE" STANCIL; JILL HUNSAKER RYAN,

    Defendants - Appellees.

-----------------------------------------

STATE OF MONTANA; THE ARIZONA LEGISLATURE; STATE OF ALABAMA; STATE OF LOUISIANA; STATE OF MISSISSIPPI; STATE OF ARKANSAS; STATE OF MISSOURI; STATE OF NEBRASKA; STATE OF FLORIDA; STATE OF NORTH DAKOTA; STATE OF IDAHO; STATE OF SOUTH CAROLINA; STATE OF INDIANA; STATE OF SOUTH DAKOTA; STATE OF IOWA; STATE OF TEXAS; STATE OF KANSAS; SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES; PRESIDENT OF THE ARIZONA SENATE; THE  AMERICAN CIVIL RIGHTS PROJECT; THE  MANHATTAN INSTITUTE;

No. 25-1068

THE  SOUTHEASTERN LEGAL
FOUNDATON; THE  YOUNG
AMERICA'S FOUNDATION,

Amici Curiae.

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 23-CV-01688-NYW-SBP)**

_____

William E. Trachman (Grady J. Block, Mountain States Legal Foundation, with him on the briefs), Mountain States Legal Foundation, for Plaintiff-Appellant.

Pawan Nelson (Philip J. Weiser, Attorney General, and Monica Manning, Assistant Attorney General, with him on the brief), Colorado Department of Law, Denver, Colorado, for the State of Colorado, for Defendants-Appellees.

Austin Knudsen, Attorney General, and Christian Corrigan, Solicitor General, Montana Department of Justice, Office of Attorney General, Helena, Montana, filed an amicus curiae brief on behalf of the State of Montana, The Arizona Legislature, States of Alabama, Louisiana, Mississippi, Arkansas, Missouri, Nebraska, Florida, North Dakota, Idaho, South Carolina, Indiana, South Dakota, Iowa, Texas, Kansas, Speaker of the Arizona House of Representatives, and President of the Arizona Senate in support of Plaintiff-Appellant and Reversal.

Ilya Shapiro, Manhattan Institute, New York, New York; Braden H. Boucek and Jordon R. Miller, Southeastern Legal Foundation, Roswell, Georgia; and Joseph A. Bingham, Dallas, Texas, The American Civil Rights Project, filed an amicus curiae brief on behalf of Southeastern Legal Foundation, The Manhattan Institute, and The American Civil Rights Project in support of Plaintiff-Appellant and Reversal.

Madison Leigh Hahn, Young America's Foundation, Reston, Virginia; Matthew Seth Sarelson, Dhillon Law Group, Inc., West Palm Beach, Florida; and John-Paul D. Deol, Dhillon Law Group, Inc., San Francisco, California, on behalf of Young America's Foundation, in support of Plaintiff-Appellant for Reversal.

2

_____

Before **BACHARACH** and **MORITZ**, Circuit Judges, and **SHELBY**, District Judge.*

_____

**BACHARACH**, Circuit Judge.

_____

Federal law prohibits race discrimination in the workplace. 42 U.S.C. § 2000e-2(a)(1). The victims are ordinarily minorities, but not always. For example, an employer might overcompensate for past discrimination against minorities by subjecting employees in the majority to a hostile environment. *See Chislett v. New York City Dep't of Ed.*, 157 F.4th 172, 188–89 (2d Cir. 2025) (holding that diversity trainings may have created a hostile work environment for a White employee); *see also Ames v. Ohio Dep't of Youth Services*, 605 U.S. 303, 309 (2025) ("Title VII's disparate treatment provision draws no distinctions between majority-group plaintiffs and minority-group plaintiffs.").

Mr. Joshua Young is a White man who used to work for the Colorado Department of Corrections. During his stint there, he had to attend a training program addressing racial sensitivity and the historical suppression of racial minorities. But Mr. Young regarded the training as so

---

* The Honorable Robert J. Shelby, United States District Judge for the District of Utah, sitting by designation.

extreme that it created a discriminatory environment for Whites like himself.

The issue for us is whether Mr. Young's allegations about the training program and its aftermath would have created a hostile work environment. We answer *no*.

## 1.    We consider the plausibility of the claim.

The district court answered this question *no*, too, and dismissed the action with prejudice for failure to state a valid claim. *See* Fed. R. Civ. P. 12(b)(6). On appeal, we conduct de novo review, applying the same standard that governed in district court. *Petrella v. Brownback*, 787 F.3d 1242, 1267 (10th Cir. 2015). In applying the standard for dismissal, the district court declined to liberally construe the complaint because it was drafted by counsel rather than a pro se litigant. Mr. Young argues that the court should have liberally construed the complaint regardless of whether it was drafted by counsel.

A tension exists in our case law. We have often said that courts should liberally construe complaints drafted by pro se parties. *E.g.*, *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (per curiam). And we've declined to liberally construe complaints when they're drafted by attorneys. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001); *Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007). *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir.

1994). But we've also said that complaints are liberally construed even in cases that don't involve pro se litigants. *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1136 (10th Cir. 2023); *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021).[1] Given this tension in our case law, we assume for the sake of argument that we should liberally construe the complaint even though it was drafted by counsel.[2]

In liberally construing the complaint, we consider the plausibility of the claim based on the facts pleaded in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For plausibility, we credit Mr. Young's allegations and view all reasonable inferences in his favor. *Lucas v. Turn Key Clinics, LLC*, 58 F.4th 1127, 1136 (10th Cir. 2023).

**2.    Mr. Young hasn't plausibly alleged a hostile work environment.**

Though we view the inferences favorably to Mr. Young, we consider "the nature and specificity" of the required allegations "based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

---

[1]    We've also said that "we read *pro se* complaints more liberally than those composed by lawyers." *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007).

[2]    Mr. Young argues that we should remand for the district court to reconsider the dismissal by liberally construing the complaint. Given de novo review, however, remand is unnecessary because we can apply the correct standard for dismissal. *See Brewer v. City of Albuquerque*, 18 F.4th 1205, 1217 n.11 (10th Cir. 2021) (stating that de novo review allowed the Court of Appeals to skirt a party's argument that the district court had improperly resolved factual disputes at the summary-judgment stage).

The context here is a claim involving a hostile work environment based on race, which is actionable under (1) Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–1 to 2000e–17, and (2) 42 U.S.C. § 1981. *See Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000) (Title VII); *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015) (42 U.S.C. § 1981).

For this claim, Mr. Young's burden is "extremely high"; he must allege facts that would render the workplace "overtly hostile." *Iweha v. State of Kansas*, 121 F.4th 1208, 1224–25 (10th Cir. 2024). The workplace is considered *hostile* only when it "is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). Because the discriminatory behavior is actionable only if it permeates the workplace, Mr. Young needed to allege "more than a few isolated incidents of racial enmity." *Bolden v, PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994).

Under this standard, the discriminatory behavior could be actionable if it was either severe or pervasive. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015). We have held that the training program alone was not enough to trigger liability. *Young v. Colo. Dep't of Corrs.*, 94 F.4th 1242, 1245, 1251& n.2 (10th Cir. 2024). After this holding, however,

6

Mr. Young added allegations about the aftermath of the training program. So we consider whether the combination of old and new allegations would have rendered the workplace "permeated with 'discriminatory intimidation, ridicule, and insult.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). To cross this threshold, the training and its aftermath had to create an abusive working environment by altering a term, condition, or privilege of Mr. Young's job. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007).

Mr. Young claims that the training program created disturbing generalizations about the role of all White people in perpetuating the mistreatment of racial minorities. This part of the claim involves a glossary, guidance in administering meetings, and recommended videos for further education about race.

First, Mr. Young points to a glossary allegedly used in the training.[3] The glossary refers to

- *race* as an unscientific concept used to justify White people's oppression of minorities,

- *white exceptionalism* as a belief by some Whites that they aren't racist even though they perpetuate white supremacy, and

---

[3]    The defendants deny use of the glossary in the training. But Mr. Young alleged use of the glossary and we credit those allegations at this stage. *See* Part 1, above.

- *white fragility* as a White person's discomfort and defensiveness when confronted by information about racial injustice.

Appellant's App'x vol. 3, at 548–54. Mr. Young objects to the terminology, but doesn't say how the glossary affected his job responsibilities.

He made similar allegations about the glossary in a prior appeal. First Am. Compl. at 7–9, *Young v. Colo. Dep't of Corrs.*, No. 22-cv-145-NYW-KLM (D. Colo. Apr. 29, 2022) (Dkt. 15); Appellant's Opening Br. at 3–9, 26–27, *Young v. Colo. Dep't of Corrs.*, No. 23-1063 (10th Cir. May 1, 2023). There we concluded that the glossary didn't render the workplace permeated with abuse. *Young v. Colo. Dep't of Corrs.*, 94 F.4th 1242, 1251–54 (10th Cir. 2024). This conclusion fits equally here given the similarity of Mr. Young's arguments about the glossary.

Second, the training allegedly advised leaders to let less powerful people speak first and to treat employees differently based on race. Appellant's App'x vol. 3, at 557. Mr. Young disagrees with this advice, but doesn't explain how it rendered the workplace permeated with abuse.

Third, the training included recommendations of videos about discriminatory housing and intersectionality. These videos contained generalized discussion about White people's attitudes toward race. Mr. Young regards this discussion as offensive, but he doesn't say how the content affected his job responsibilities, interactions with fellow employees, or career advancement.

Mr. Young also relied on these videos in the prior appeal. Appellant's Opening Br. at 11–14, *Young v. Colo. Dep't of Corrs.*, No. 23-1063 (10th Cir. May 1, 2023). We concluded that these videos didn't render the workplace permeated with abuse. *Young v. Colo. Dep't of Corrs.*, 94 F.4th 1242, 1250–51 (10th Cir. 2024). This conclusion fits equally here given the similarity of Mr. Young's allegations about the videos.

Mr. Young argues that he has also made five new allegations about the effect of the training on his day-to-day work:

1.    An ongoing commitment existed for this kind of training.

2.    Employees had to endorse the race-based ideology reflected in the training.

3.    Supervisors acted upon the training for disciplinary decisions.

4.    The training compromised security.

5.    The Department of Corrections failed to investigate his allegations.

Oral Arg. 4:18–24, 5:30–6:25; Appellant's Opening Br. at 33–34, 46–54.

First, Mr. Young argues that the Department of Corrections committed to this kind of training and would continue with the same racist blueprint. But this argument stretches even a liberal construction of the complaint. Its attachments show that the contents of the training will change, with the slides themselves noting that the terminology will "be modified on an ongoing basis." Appellant's App'x vol. I, at 148.

9

Regardless of those modifications, however, Mr. Young experienced only a single training session and he quit four months later. His fears about future programming wouldn't suggest that the workplace had turned "overtly hostile" and "permeated with discriminatory behavior" in this four-month period. *Iweha v. Kansas*, 121 F.4th 1208, 1224–25 (10th Cir. 2024) ("overtly hostile"); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986))).

Mr. Young made a similar argument in the prior appeal, relying on his allegation "that [equality, diversity, and inclusion] training would be, at a minimum, an actual recurring obligation." Appellant's Opening Br. at 15, *Young v. Colo. Dep't of Corrs.*, No. 23-1063 (10th Cir. May 1, 2023). We rejected this argument, reasoning that Mr. Young hadn't "allege[d] that the training occurred more than once." *Young v. Colo. Dep't of Corrs.*, 94 F.4th 1242, 1251 (10th Cir. 2024). Here too, Mr. Young hasn't alleged that the training occurred more than once.

In the earlier version of the complaint, Mr. Young also alleged that training on equity, diversity, and inclusion wouldn't be "a one-time event." Appellant's App'x vol. 3, at 573. We concluded that this allegation would not suffice, but added that "[p]erhaps an ongoing, continuing commitment from Mr. Young's supervisors to mandatory [equity, diversity, and

10

inclusion] trainings with content similar to the one here may evolve into a plausible hostile workplace claim." *Young v. Colo. Dep't of Corrs.*, 94 F.4th 1242, 1251 n.2 (10th Cir. 2024). In the new version of the complaint, however, Mr. Young just speculates that future training would treat White people in a negative light.

Second, Mr. Young argues that the job required him to endorse the training's race-based ideology. But the training included admonitions that employees

- didn't need to change their values or beliefs and

- should discuss questions and challenges from the training.

Appellees' Supp. App'x at 11, 29, 49, 68. Given these admonitions, Mr. Young's allegations do not plausibly allege a pattern of abuse against White employees who disagreed with the training. After all, Mr. Young didn't plead any facts suggesting

- that he had experienced negative feedback in the four months following the training or

- that his supervisors had discussed the training.

Mr. Young insists that the training should be enough to trigger liability because it came from the employer itself. He made a similar argument in the prior appeal: "As several courts have recognized, discriminatory conduct coming from supervisors or others in positions of authority over the plaintiff is more severe than conduct perpetuated by

11

coworkers." Appellant's Opening Br. at 29, *Young v. Colo. Dep't of Corrs.*, No. 23-1063 (10th Cir. May 1, 2023). We rejected this argument, reasoning that Mr. Young needed to combine his allegation of a policy with a "pattern of race-based intimidation, ridicule, or insult that accompanied his employer's official acts." *Young v. Colo. Dep't of Corrs.*, 94 F.4th 1242, 1252 (10th Cir. 2024). We concluded that Mr. Young hadn't alleged such a pattern, *id.*, and he still hasn't. He instead bases this argument solely on the employer's role in the training, just as he had in the prior appeal.

Third, Mr. Young argues that supervisors were already acting upon the training in making disciplinary decisions. For this argument, Mr. Young refers to an allegation in the complaint about an incident involving another officer of a different race. In this incident, the officer allegedly used a complaint about racism to reverse a disciplinary sanction. Appellant's App'x vol. 3, at 571. But Mr. Young doesn't say whether the accusation of racism was warranted, whether this incident took place after the training, or whether the incident affected his work conditions. Absent that information, one unexplained reversal of discipline against another officer wouldn't render Mr. Young's job permeated with abuse.

Granted, Mr. Young alleges that he thought that others had viewed him as a racist. But he doesn't allege that anyone said that he was racist after the training; his suspicions about unspoken attitudes wouldn't create an abusive working environment. *See Smith v. Nw. Fin. Acceptance, Inc.*,

12

129 F.3d 1408, 1412 (10th Cir. 1997) (comments creating offensive feelings don't affect employment conditions to a "sufficiently significant degree" (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir.1971))).

Fourth, Mr. Young argues that the training compromised security because White guards might loosen restrictions to avoid accusations of racism. We've already characterized these allegations as speculative. *Young v. Colo. Dep't of Corrs.*, 94 F.4th 1242, 1245, 1251 (10th Cir. 2024).

In his new version of the complaint, Mr. Young adds allegations that the training caused him to second-guess his decisions about using force and screening for contraband. But these allegations don't refer to particular instances or suggest that the changes jeopardized security. Instead, the new allegations reflect only hesitation—not alteration of the job. *See Trujillo v. Univ. of Colo. Health Sci. Ctr.*, 157 F.3d 1211, 1213–14 (10th Cir. 1998) (holding that a Hispanic employee's evidence of increased monitoring wasn't enough to avoid summary judgment on a claim involving a hostile work environment); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[C]onduct must be extreme to amount to a change in the terms and conditions of employment.").

Finally, Mr. Young alleges that the Colorado Department of Corrections failed to investigate his allegations. But he doesn't explain how the Department's failure to investigate would have affected his work environment.

13

He made a similar argument in the prior appeal. Appellant's Opening Br. at 38, *Young v. Colo. Dep't of Corrs.*, No. 23-1063 (10th Cir. May 1, 2023). We acknowledged the argument, but concluded that it didn't address the effect of the training on his interactions with supervisors and coworkers. *Young v. Colo. Dep't of Corrs.*, 94 F.4th 1242, 1245, 1251 (10th Cir. 2024). This conclusion is equally fitting here.

Mr. Young disagrees, arguing that the failure to investigate constitutes an independent reason to credit his allegations of a hostile work environment. Granted, an employer may incur liability for failing to investigate "an actionable hostile environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). But an employer's failure to investigate may merely "preserve[] the very circumstances that were the subject of the complaint." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010), *discussed with approval* in *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640 (10th Cir. 2012), *abrogated on other grounds by Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346 (2024). "[U]nless it leads to demonstrable harm," a failure to investigate "leaves an employee no worse off than before the complaint was filed." *Daniels*, 701 F.3d at 640.

Combining Mr. Young's arguments, we consider whether he has pleaded facts showing that the workplace has already become "permeated with 'discriminatory intimidation, ridicule, and insult.'" *Harris v. Forklift*

14

*Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). Mr. Young hasn't alleged facts suggesting an abusive environment from a failure to investigate.

\* \* \*

We previously held that

- the single incident of training wasn't enough to allege a hostile working environment and

- the allegations about employment opportunities, workplace cohesion, and security risks were speculative.

*Young v. Colo. Dep't of Corrs.*, 94 F.4th 1242, 1245, 1251–52 (10th Cir. 2024). Though Mr. Young has added five allegations, they don't cross the "extremely high" threshold to create a workplace "permeated with discriminatory behavior." *Iweha v. State of Kansas*, 121 F.4th 1208, 1224–25 (10th Cir. 2024) ("extremely high" standard); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("permeated with 'discriminatory intimidation, ridicule, and insult'" (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986))).[4] So the district court didn't err in dismissing the claim of a hostile work environment.

---

[4]    Mr. Young points out that the Attorney General, Equal Employment Opportunity Commission, and Department of Education recognize that training in equity, diversity, and inclusion can rise to the level of unlawful discrimination. We assume for the sake of argument that these agencies are right. The question here, however, is whether Mr. Young has alleged a plausible claim that the training and the aftermath created a workplace permeated with discriminatory behavior. *See Harris*, 510 U.S. at 21.

### 3.    Mr. Young hasn't plausibly alleged a constructive discharge.

Mr. Young also claims that the abusive work environment forced him to quit. But we've held that he hasn't plausibly alleged a hostile work environment. That holding dooms the claim of a constructive discharge. *Jones v. Barnhart*, 349 F.3d 1260, 1270 (10th Cir. 2003). So the court didn't err in dismissing this claim.

### 4.    The district court didn't err in making the dismissal *with prejudice*.

The district court dismissed the action with prejudice after Mr. Young had filed four versions of the complaint in two separate actions. Mr. Young argues that the dismissal should have been without prejudice.

For this argument, we consider whether the district court abused its discretion. *Seale v. Peacock*, 32 F.4th 1011, 1027 (10th Cir. 2022). The court didn't abuse its discretion because Mr. Young hadn't said how he could avoid the shortcomings in his fourth version of the complaint. *See Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (affirming the district court's denial of a request to file an amended complaint because the plaintiff "nowhere explained how a proposed amendment would cure the deficiencies identified by the district court"). So we uphold the decision to make the dismissal *with prejudice*.

Affirmed.